IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER SNYDER,                        *

    *Plaintiff,*                        *

    v.                                 *

                          Civil Action No. RDB-24-2141

SANTOSH KAVANAKUDY, et al,              *

    *Defendants.*                       *

*   *   *   *   *   *   *   *   *   *   *   *   *

**<u>MEMORANDUM OPINION</u>**

    This case arises out of incidents of alleged sexual harassment and assault that occurred while Plaintiff Jennifer Snyder ("Plaintiff" or "Snyder") was incarcerated at Maryland Correctional Institution for Women ("MCI-W"). (ECF No. 2 ¶¶ 1–2.)[1] These incidents involved Defendant Santosh Kavanakudy ("Kavanakudy"), a former dietary correctional officer at MCI-W. (*Id.*) Her six-count Complaint was filed in the Circuit Court for Anne Arundel County, and removed to this Court pursuant to 28 U.S.C. § 1331 based on federal question jurisdiction in some of her claims. (ECF No. 1.) Snyder asserts all six claims against Kavanakudy, and asserts four of the six claims against the Maryland Department of Public Safety & Correctional Services ("DPSCS") and the State of Maryland (the "State"). (ECF No. 2.) Specifically, Snyder brings a claim alleging violations of Articles 16, 24, 25 and 26 of the Maryland Declaration of Rights against all Defendants ("Count I") (*id.* ¶¶ 40–64); a 42 U.S.C.

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

§ 1983 claim alleging violations of the Eighth Amendment against Kavanakudy ("Count II") (*id.* ¶¶ 65–76); a § 1983 claim alleging violations of the Fourteenth Amendment's due process clause against Kavanakudy ("Count III") (*id.* ¶¶ 77–90); as well as three claims in tort against all Defendants—one count of negligence and gross negligence ("Count IV") (*id.* ¶¶ 91–97); one count of battery ("Count V") (*id.* ¶¶ 98–106); and one count of intentional infliction of emotional distress ("IIED") ("Count VI") (*id.* ¶¶ 107–115).

While Defendant Kavanakudy filed an Answer (ECF No. 15) to Plaintiff's Complaint (ECF No. 2), Defendants DPSCS and the State (collectively, the "State Defendants") opted to file a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (the "State Defendants' Motion to Dismiss") (ECF No. 16). The State Defendants' Motion to Dismiss (ECF No. 16) remains pending and is opposed by Plaintiff (ECF No. 17). Also pending on this Court's docket is Plaintiff's Motion to Show Good Cause to Waive the Notice Requirement of the Maryland Torts Claims Act ("MTCA") (ECF No. 18), which Snyder filed contemporaneous to her filing of her opposition and to which no response has been filed. The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, the Plaintiff's Motion to Show Good Cause (ECF No. 18) is GRANTED; and the State Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 16), construed as a motion to dismiss at this stage, is GRANTED IN PART and DENIED IN PART. Specifically, the State Defendants' Motion to Dismiss (ECF No. 16) is GRANTED with respect to Counts V (battery) and VI (IIED) as alleged against the State Defendants. That is, Counts V and VI as alleged against the State Defendants are DISMISSED WITH PREJUDICE, as such claims are advanced against the State Defendants

2

under a theory of vicarious liability. The State Defendants' Motion to Dismiss (ECF No. 16) is DENIED with respect to Counts I (violations of Articles 16, 24, 25 and 26 of the Maryland Declaration of Rights) and IV (negligence and gross negligence). As explained below, while Snyder may not pursue Counts I and IV against the State Defendants under the doctrine of respondeat superior, she may pursue those claims against the State Defendants on a theory of direct liability.

## BACKGROUND

### I.    Factual Background

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 2), and accepted as true for the purpose of the State Defendants' Motion to Dismiss (ECF No. 16).

Before she was paroled in June 2023, Plaintiff Jennifer Snyder had been incarcerated at the Maryland Correctional Institution for Women in Jessup, Maryland since 2019. (ECF No. 2 ¶¶ 1, 35.) While incarcerated, Snyder worked in the storage room at MCI-W under the supervision of Dietary Lieutenant Correction Officer Santosh Kavanakudy. (*Id.* ¶ 22.)

Snyder alleges that on May 29, 2021, Kavanakudy requested that she come to the dietary section in the storage room to assist him because he was short-staffed. (*Id.* ¶ 23.) Snyder alleges that when she arrived to the storage room, Kavanakudy blew her a kiss and asked Snyder if she "was ready to go further." (*Id.* ¶¶ 24–25.) According to Snyder,

Kavanakudy had made several previous advances on her, and Kavanakudy allegedly told her on this instance that he would help Snyder at her parole hearing if she performed oral sex on him or if she let him perform oral sex on her. (*Id.*) Snyder agreed, and Kavanakudy performed oral sex on her. (*Id.* ¶¶ 25–27.) Snyder alleges that Kavanakudy then told Snyder that he could not help her at her parole hearing. (*Id.* ¶ 28.)

After Snyder then reported the incident, an investigation followed. (*Id.* ¶¶ 30–33.) On April 13, 2022, Kavanakudy pled guilty to sexual misconduct between a correctional employee and an inmate. (*Id.* ¶ 34.) He was sentenced to three years' incarceration with all but four days suspended. (*Id.*)

After she reported this incident, Snyder was placed in protective custody in the prison and lost her employment in the storage room. (*Id.* ¶ 35.) Snyder alleges that because of the incident and "her fear of being subjected to further abuse," she has suffered from various mental health issues, including depression and Post-Traumatic Stress Disorder ("PTSD"). (*Id.* ¶¶ 35–39) Though she was paroled in June 2023, Snyder alleges that she continues to experience physical and emotional symptoms of her resulting mental health issues, including "increased feelings of anxiety and anger, nightmares, flashbacks, intrusive thoughts about the abuse and struggled with eating, sleeping, and concentrating." (*Id.*)

## II.    Procedural Background

On May 20, 2024, Snyder filed a six-count Complaint in the Circuit Court for Anne Arundel County, Maryland against Kavanakudy and the State Defendants. (ECF No. 2.) In Count I, Snyder asserts that all Defendants "engaged in activities that violated Plaintiff's rights that are protected under the Maryland Declaration of Rights" and did so "by committing,

allowing, enabling, facilitating, and failing to prevent the sexual abuse on Plaintiff." (*Id.* ¶¶ 40–64.)  Through Counts II and III, Snyder brings claims under 42 U.S.C. § 1983 against Defendant Kavanakudy for alleged violations of the Eighth Amendment and Fourteenth Amendment, respectively.  (*Id.* ¶¶ 65–90.)  In Count IV, Snyder asserts a claim for negligence and gross negligence against all Defendants.  (*Id.* ¶¶ 91–97.)  Snyder argues that Defendants "had a duty to provide care, safekeeping, and protection, and not create or maintain a dangerous condition which could harm persons such as Plaintiff, who were under their control." (*Id.* ¶ 92.)  In Count V, Snyder advances a claim of battery against all Defendants, (*id.* ¶¶ 98–106)—against Kavanakudy for his "intentional[], offensive[], harmful[] . . . touch[ing]" of Plaintiff without her consent, and against the State Defendants for vicarious liability.  (*Id.* ¶¶ 99, 105.)  In Count VI, Snyder brings a claim for intentional infliction of emotional distress ("IIED") against all Defendants.  (*Id.* ¶¶ 107–115.)  The IIED claim is brought against Kavanakudy for promising to "help [Snyder] with her parole hearing if she agreed to engage in sexual acts with [him]" while knowing "he had no ability to, and was never going to [do so]," and then subsequently committing nonconsensual sexual acts upon her, and then telling her "he could not help [her]." (*Id.* ¶¶ 108–110.)

On July 25, 2024, the State Defendants, with Kavanakudy's consent, removed the action to this Court pursuant to this Court's federal question jurisdiction over Plaintiff's § 1983 claims.  (ECF No. 1.)  Following three requests for extension of time to respond to the Complaint, (ECF Nos. 6; 9; 11), responsive pleadings were due by November 27, 2024.  While Kavankudy filed an Answer (ECF No. 15), the State Defendants filed the instant Motion to Dismiss for Failure to State a Claim, or in the alternative, a Motion for Summary Judgment

(ECF No. 16). Snyder responded in opposition (ECF No. 17) and additionally filed a Motion for Order to Show Cause to Waive the Notice Requirement of the MTCA (ECF No. 18.) Pursuant to Local Rule 105.2(a) (D. Md. 2023), the State Defendants had until December 24, 2024 to file a reply memorandum in further support of their motion to dismiss, and similarly until December 24, 2024 to file a response memorandum in opposition to the Plaintiff's motion. As of the date of this filing, the State Defendants have filed neither a reply memorandum in further support of their motion, nor a response memorandum in opposition to the Plaintiff's motion. Nevertheless, this matter is now ripe for review.

## STANDARD OF REVIEW

The State Defendants have filed a Motion to Dismiss, or, in the alternative, for Summary Judgment (ECF No. 16), though no extrinsic documents were submitted by State Defendants. When a party submits a motion that is one to dismiss or alternatively for summary judgment, the court has discretion to determine which standard is implicated in deciding the motion. *Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). This Court will construe the State Defendants' Motion (ECF No. 16) as a motion to dismiss, as the Fourth Circuit has stated that "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

Through her six-count Complaint (ECF No. 2), Snyder brings a claim alleging violations of Articles 16, 24, 25 and 26 of the Maryland Declaration of Rights against all Defendants ("Count I") (*id.* ¶¶ 40–64); a § 1983 claim alleging violations of the Eighth Amendment against Kavanakudy ("Count II") (*id.* ¶¶ 65–76); a § 1983 claim alleging violations of the Fourteenth Amendment's due process clause against Kavanakudy ("Count III") (*id.* ¶¶ 77–90); as well as three claims in tort—one count of negligence and gross negligence against

all Defendants ("Count IV") (*id.* ¶¶ 91–97); one count of battery against all Defendants ("Count V") (*id.* ¶¶ 98–106); and one count of intentional infliction of emotional distress against all Defendants ("Count VI") (*id.* ¶¶ 107–115).

Through their Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 16), which this Court construes as a motion to dismiss, the State Defendants move for dismissal of the Plaintiff's case against DPSCS and the State. Preliminarily, the Court calls attention to portions of the State Defendants' Motion to Dismiss that it need not address in this Memorandum Order, briefly explaining why that is so.

First, this Court notes that the bulk of the State Defendants' Motion to Dismiss is focused on Snyder's § 1983 claims, (ECF No. 16-1 at 5–7, 11–14), which are not asserted against the State Defendants, but rather are exclusively asserted against Kavanakudy, (ECF No. 2 ¶¶ 65–90). If there was any doubt, Snyder confirms as much in her opposition. (ECF No. 17 at 3–4.) As such, the Court need not address the State Defendants' argument that Snyder's § 1983 claims should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

Second, the State Defendants ask this Court to decline supplemental jurisdiction over the state law claims as set forth in Counts I, IV, V, and VI, should the Court dismiss the Plaintiff's federal claims set forth in Counts II and III. (ECF No. 16-1 at 15.) As noted, the federal claims (Counts II and III) in this litigation are asserted solely against Kavanakudy, who has filed an Answer (ECF No. 15). Thus, regardless of this Court's disposition of the State Defendants' Motion (ECF No. 16), this Court retains jurisdiction over the federal claims alleged against Kavanakudy under 28 U.S.C. § 1331, as well as supplemental jurisdiction under

18 U.S.C. § 1367 over the state law claims advanced against all Defendants.[2]  The Court need not further address the State Defendants' argument on this point.

In addition to the two aforementioned arguments, the State Defendants contend (1) that Plaintiff's state claims (Counts I, IV, V, and VI) should be dismissed for failure to comply with the MTCA notice requirements set forth in MD. CODE, STATE GOV'T § 12-106(b), (*id.* at 7–11); (2) that Plaintiff's claims against the State Defendants' must be dismissed because Kavanakudy's conduct was outside the scope of his employment, (*id.* at 12–14); and (3) that Count I should be dismissed because claims under the Maryland Declaration of Rights are typically interpreted *in pari materia* with their federal counterparts, (*id.* at 14–15). The Court addresses these arguments in turn below.

## I.     MTCA Notice Requirement

In Count I, Snyder brings a claim alleging violations of Articles 16, 24, 25 and 26 of the Maryland Declaration of Rights against all Defendants, (ECF No. 2 ¶¶ 40–64); and in Counts IV, V, and VI, Snyder asserts claims of negligence and gross negligence, battery, and IIED against all Defendants, (*id.* ¶¶ 91–115).  The State Defendants contend that these claims must be dismissed for failure to comply with Maryland Tort Claims Act notice requirements set forth in MD. CODE, STATE GOV'T § 12-106(b), as Snyder did not send written notice of the claim to the State Treasurer within one year of her injuries.  (ECF No. 16-1 at 7–11.)  In her response in opposition, Snyder points to MD. CODE, STATE GOV'T § 12-106(c)(2), which provides that subsection (b) "does not apply if, within 1 year after the injury to person or

---

[2]  Supplemental jurisdiction is rooted in principles of efficiency and judicial economy, aiming to avoid the "piecemeal litigation" that would result from forcing related claims into separate court systems.  *N. Am. Van Lines, Inc. v. Atl. Transfer & Storage Co.*, 487 F. Supp. 2d 672, 675 (D.S.C. 2007) (citations omitted).

property that is the basis of the claim, the State has actual or constructive notice of: (i) the claimant's injury; or (ii) the defect or circumstances giving rise to the claimant's injury." (ECF No. 17 at 4–9.) Snyder also filed a Motion to Show Good Cause to Waive the Notice Requirement of the MTCA (ECF No. 18 at 1–4), arguing that, even if the Court finds that she was required to give notice under § 12-106(b), she qualifies for an exception under § 12-106(c) because "there is good cause to allow her case to proceed," namely, that Snyder "was an incarcerated inmate with restricted freedom who suffered significant mental and psychological injuries from the incident" and that she "act[ed] and pursue[d] this matter with the diligence of an ordinary prudent person under her circumstances." (ECF No. 18 at 3.)

A suit cannot be brought against the State or its agencies unless Congress has abrogated sovereign immunity or the State has waived it. *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020); *Stern v. Bd. of Regents, Univ. Sys. of Md.*, 846 A.2d 996, 1001 (Md. 2004) (noting that no contract or tort suit can be maintained against a state agency or actor unless "the General Assembly has specifically waived the doctrine [of sovereign immunity]"). "[A] state's removal of a suit to federal court waives sovereign immunity only if the state has consented to suit in its own courts." *Biggs*, 953 F.3d at 241. The Maryland Tort Claims Act "provides a limited waiver of sovereign immunity and is the sole means by which the State of Maryland and its personnel may be sued in tort." *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (quotation omitted). The MTCA "does not distinguish between constitutional torts and common law torts," thus the MTCA notice requirement encompasses Snyder's state constitutional claim asserted against the State Defendants in Count I, in addition to the claims in tort asserted against the State Defendants in Counts IV, V, and VI. *See Francis*

*v. Md.*, No. ELH-21-1365, 2023 WL 2456553, at *23 (D. Md. Mar. 10, 2023) (citing *Newell v. Runnels*, 967 A.2d 729, 763 (Md. 2009)).

The MTCA's waiver of sovereign immunity "is conditioned upon, *inter alia*, the injured party filing notice of its tort claim with the State Treasurer's Office within one year after the injury." *Id.* (citing MD. CODE ANN., STATE GOV'T § 12-106(b)(1)). Pursuant to section 12-106(b) of the MTCA, with exceptions discussed below:

> [A] claimant may not institute an action under [the MTCA] unless:
>
> > (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;
> >
> > (2) the Treasurer or designee decides the claim finally; and
> >
> > (3) the action is file within 3 years after the cause of action arises.

MD. CODE ANN., STATE GOV'T § 12-106(b). The notice requirement is "intended to 'afford[] the State the opportunity to investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time.'" *Francis*, 2023 WL 2456553, at *24 (quoting *Haupt v. State*, 667 A.2d 179, 183 (Md. 1995)). The notice requirement "is a condition precedent to the right to maintain an action for damages." *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F. Supp. 2d 599, 603 (D. Md. 2005); *Gray v. Maryland*, 228 F. Supp. 2d 628, 641 (D. Md. 2002).

Snyder concedes that she did not provide notice pursuant to section 12-106(b) of the MTCA, but she contends that, under the 2016 amendments to the MTCA, her failure to provide proper notice to the Treasurer does not necessarily bar her claims. (ECF No. 17 at 4–9). The Maryland General Assembly amended the MTCA's notice requirement to include two exceptions to a failure to submit a written claim:

> (1) If a claimant fails to submit a written claim in accordance with subsection (b)(1) of this section, on motion by a claimant and for good cause shown, the court may entertain an action under this subtitle unless the State can affirmatively show that its defense has been prejudiced by the claimant's failure to submit the claim.
>
> (2) Subsection (b)(1) and (2) of this section does not apply if, within 1 year after the injury to person or property that is the basis of the claim, the State has actual or constructive notice of:
>
> > (i) the claimant's injury; or
> >
> > (ii) the defect or circumstances giving rise to the claimant's injury.

MD. CODE, STATE GOV'T § 12-106(c).  Snyder contends the Court may hear her claims under either exception.  The Court finds that Snyder has demonstrated good cause under the first exception set forth in § 12-106(c)(1), thus the Court need not decide whether Snyder has satisfied the second exception set forth in § 12-106(c)(2).[3]

To avail herself of the first exception, she must raise it "on motion."  MD. CODE, STATE GOV'T § 12-106(c)(1).  Accordingly, she has filed the pending Motion to Show Good Cause to Waive the Notice Requirement of the MTCA and Request for Hearing (ECF No. 18).

Under the MTCA, "good cause" exists "if an ordinarily prudent person in the same circumstances would not have complied with the notice requirement."  *Littleton v. Md.*, No.

---

[3]  The second exception excuses failure to provide written notice when the State had actual or constructive notice of the claim—generally referred to as the doctrine of substantial compliance.  *Francis*, 2023 WL 2456553, at *26.  Substantial compliance "entails a communication that provides the State requisite and timely notice of facts and circumstances giving rise to the claim."  *Id.* (quotation omitted).  The doctrine is "narrowly construed," and "is not license to ignore the clear mandate of the MTCA."  *Chinwuba v. Larsen*, 790 A.2d 83, 98 (Md. Ct. Spec. App. 2002), *rev'd on other grounds*, 832 A.2d 193 (Md. 2003).  Here, Snyder contends that she satisfied the second exception set forth in § 12-106(c)(2) as she immediately reported her claim to State personnel at MCI-W, a criminal investigation was conducted involving State personnel, and Defendant Kavanakudy, a former State employee, pled guilty to criminal charges and was sentenced in State court.  (ECF No. 17 at 4–9 (citing ECF No. 2 ¶¶ 6, 29–35).)  This Court need not address whether Snyder has satisfied the second exception set forth in § 12-106(c)(2).

JKB-17-3164, 2018 WL 1123694, at *5 (D. Md. Mar. 1, 2018) (citation omitted)).  Courts have found good cause to excuse failure to satisfy the MTCA's notice requirement if an unrepresented plaintiff cannot comply due to the circumstances of incarceration.  *See Kelly v. Miller*, No. ELH-20-2531, 2022 WL 2703827, at *27 (D. Md. July 12, 2022) (finding good cause existed where the *pro se* plaintiff was incarcerated and on disciplinary segregation); *but see Francis*, 2023 WL 2456553, at *25 (finding no good cause existed where, despite the plaintiff being incarcerated and in solitary confinement during a portion of the notice period, he failed to submit notice after being released within one year of the incident).

As Judge Boardman of this Court observed in *Brooks v. St. Charles Hotel Operating, LLC*, No. DLB-23-0208, 2023 WL 6244612 (D. Md. Sept. 26, 2023), courts have considered what is "good cause" more frequently under an analogous provision in the Local Government Tort Claims Act ("LGTCA"), which also has a strict notice of claim requirement that must be met before local governments consent to waiver of governmental immunity.  As with the MCTA, the LGTCA allows the court to excuse lack of notice "upon motion and for good cause shown."  MD. CODE ANN., CTS. & JUD. PROC. § 5-304; *Prince George's Cnty. v. Longtin*, 19 A.3d 859, 869 (Md. 2011) (noting that this provision "affords relief from strict application [of] the notice requirement").  Like the MTCA, the LGTCA's test for good cause is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."  *Heron v. Strader*, 761 A.2d 56, 63 (Md. 2000).  This good cause exception "leaves the courts some discretion in enforcing the notice requirement, and allows a court, in certain circumstances, to avoid an unjust result."  *Longtin*, 19 A.3d at 869–70.  Though courts consider a combination of factors, the Maryland

Supreme Court recognizes several broad categories of circumstances that constitute good cause, including "excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard)." *Heron*, 761 A.2d at 56 (citations omitted); *Moore v. Norouzi*, 807 A.2d 632, 647–49 (Md. 2002) (holding that the plaintiff demonstrated excusable neglect where a government contractor said it "received formal notification of" his injury and reasoning that "an ordinarily prudent person under the circumstances . . . reasonably could, and would, rely on [that] representation[]").

Snyder argues that this Court should find good cause to excuse her failure to comply with the notice requirement because "there is good cause to allow her case to proceed," namely, that Snyder "was an incarcerated inmate with restricted freedom who suffered significant mental and psychological injuries from the incident" and that she "act[ed] and pursue[d] this matter with the diligence of an ordinary prudent person under her circumstances." (ECF No. 18 at 3.) Snyder further argues that "the State of Maryland has not suffered any prejudice by the failure to provide written notice within the one (1) year time period," noting she "immediately reported the incident to Defendant Kavanakudy's supervisor who was a State employee," resulting in an investigation culminating in Kavanakudy's prosecution. (*Id.* at 3–4.)

The Court observes that the event giving rise to Snyder's claim occurred on May 29, 2021, and Plaintiff remained incarcerated until June 2023—that is, for more than a year after the one-year window to submit a written claim had lapsed. While she could have attempted to comply with the statute by providing notice as soon as it became practicable and before filing her six-count complaint in Anne Arundel Circuit Court on May 20, 2024, she did

not, and even if she had, it would have been well after the one year time period lapsed. Under these circumstances—namely, where Snyder remained incarcerated for more than a year after the one-year window to submit a written claim to the State Treasurer closed—the Court exercises its discretion to find good cause, due to excusable neglect or mistake or otherwise, to excuse Snyder's failure to provide notice of her claims.

## II.    The Doctrine of Respondeat Superior

The Court turns to address whether Plaintiff can pursue her state constitutional claim and intentional tort claims against the State Defendants under the doctrine of respondeat superior. Based on the allegations in the Complaint, the Court construes Count I to be advanced against Kavanakudy for direct liability, and against the State Defendants for both direct and vicarious liability. With respect to the negligence and gross negligence claim advanced in Count IV, the Court construes this claim to be alleged against Kavanakudy for direct liability, and against the State Defendants for both direct and vicarious liability. With respect to the battery and IIED claims advanced in Counts V and VI, respectively, the Court construes these claims to be alleged against Kavanakudy for direct liability, and against the State Defendants for vicarious liability. That is, while the Court understands Plaintiff to be pursuing Counts I and IV against the State Defendants for both direct and vicarious liability, the Court construes Plaintiff to be pursuing Counts V and VI against the State Defendants for vicarious liability only.[4] The Court will address the viability of Plaintiff's claims in tort under the doctrine of respondeat superior before turning to consider whether Plaintiff can

---

[4] The Court notes that Plaintiff's opposition (ECF No. 17) does not provide clarity as to whether Snyder's claims against the State Defendants in Counts I, IV, V, and V are claims of direct liability and/or vicarious liability. If anything, Plaintiff's opposition seems to suggest that such claims are claims of vicarious liability. (*Id.* at 12–16.)

pursue her state constitutional claim against the State Defendants on a theory of vicarious liability.

### A. Snyder's Intentional Tort Claims

To impose vicarious liability against the State Defendants for Kavanakudy's tortious conduct, Kavanakudy's conduct giving rise to this case must be found to be within the scope of his employment. *See Embrey v. Holly*, 442 A.2d 966, 969 (Md. 1982) ("[A]n employer is ordinarily responsible for the tortious conduct of his employee committed while the servant was acting within the scope of the employment relationship."). In Maryland, the "general test . . . for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991). "By 'authorized' is not meant authority expressly conferred, but whether the act as such was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders." *Hopkins C. Co. v. Read Drug & C. Co.*, 92 A. 478, 479–80 (Md. 1914) (quoting WOOD ON MASTER AND SERVANT § 279 (1877)). In contrast, employee conduct that is outside the scope of employment occurs when it is "personal," where it "represent[s] a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality." *Balt. City Police Dep't v. Potts*, 227 A.3d 186, 201 (Md. 2020) (quoting *Sawyer*, 587 A.2d at 471). Courts generally consider "unprovoked, highly unusual, and quite outrageous" conduct as personal and outside the scope of employment. *Sawyer*, 587 A.2d at 471.

In *Potts*, the Maryland Supreme Court[5] explained

> In determining whether an employee acted within the scope of employment, a court must engage in a case-specific analysis—*i.e.*, resolve the issue on a fact-intensive, case-by-case basis. Indeed, within Maryland case law regarding scope of employment, "there are few, if any, absolutes." [*Sawyer*, 587 A.2d at 471.] Like the United States District Court for the Northern District of Alabama, though, we agree that it is evident that where an officer sexually assaults a suspect in custody, the officer does not act within the scope of employment, and where an officer uses excessive force, the officer may be acting within the scope of employment. [*See Titan Indem. Co. v. Newton*, 39 F. Supp. 2d 1336, 1342–43 (Md. 1999).] Between these opposite ends of the spectrum, in Maryland, the constant is that the test enunciated by this Court in *Sawyer* is accepted as the framework for analyzing whether an officer acted within the scope of employment.

227 A.2d at 210. Sexual assaults committed by an employee are consistently[6] found to be outside the scope of employment in Maryland.[7] *See Doe v. Anne Arundel Cnty.*, No. JRR-23-3451, 2025 WL 675059, at *16 (D. Md. Mar. 3, 2025) ("Thus, where Plaintiff's theory of respondeat superior liability is based upon two employees' sexual assault conduct, such

---

[5] At the time of *Potts*, the Maryland Supreme Court was named the "Court of Appeals of Maryland." At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Maryland Supreme Court." The name change took effect on December 14, 2022.

[6] To be sure, Plaintiff has cited a Maryland case wherein a state court permitted a plaintiff to pursue claims against her assailant's employer, a common carrier who provides transportation for hire, under the doctrine of respondeat superior. While it is true that the court in *Reid-Green v. Smith*, No. 24-C-15-005573, 2017 WL 2560382 (Md. Cir. Ct. Feb. 14, 2017), held that the issue of whether the rideshare driver was acting within the scope of his employment must be submitted to the jury, the court explained that the driver's job duties required him to come into close physical proximity with the plaintiff. The court noted that the plaintiff's assailant "was expected to come into physical contact with [the plaintiff] by virtue of his need to secure her before beginning the trip and to loosen the restraint after completing the trip[,] [t]hus, the nature of the employment required [the employee] to come into close proximity with [the plaintiff]."

[7] While Plaintiff notes that the United States Supreme Court "has explained that . . . employes who commit sexual assaults can still be acting within the scope of employment" and cites to several cases from around the country wherein courts "have found that prison guards sexually assaulting an inmate [were] still acting within the scope of their employment," (ECF No. 17 at 13–14), courts applying Maryland law have consistently found that an employer is not vicariously liable for the torts of assault and battery based on sexual assaults by an employee as they are outside the scope of employment. Thus, because Plaintiff's theory of vicarious liability is based upon Kavanakudy's sexual assault, such conduct is outside the scope of his employment based upon Maryland law.

conduct is outside the scope of their employment based upon Maryland law."); *Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 454 (D. Md. 1999) ("[A]n employer cannot be held vicariously liable for sexual assaults committed by its employees or one it may have given apparent authority."); *Wolfe v. Anne Arundel Cnty.*, 821 A.2d 52, 53, 60 (Md. 2003) (holding that county law enforcement officer acted outside scope of employment in raping the plaintiff for purposes of the Local Government Tort Claims Act); *Green v. Wills Grp., Inc.*, 161 F. Supp. 2d 618, 626 (D. Md. 2001) ("[A]n employer is not vicariously liable for the torts of assault and battery based on sexual assaults by another employee as they are outside the scope of employment.").

Plaintiff's theory of vicarious liability is based upon Kavanakudy's sexual assault conduct, and such conduct is outside the scope of employment under Maryland law.  As such, to the extent Snyder's tort claims are for vicarious liability against the State Defendants, such claims must be dismissed against the State Defendants.  Having determined that Plaintiff's claims in tort may not proceed under a theory of vicarious liability, Count IV is DISMISSED WITH PREJUDICE to the extent it is brought against the State Defendants under a theory of vicarious liability,[8] and Counts V and VI are DISMISSED WITH PREJUDICE.

### B.  Snyder's State Constitutional Claim

Preliminarily, this Court notes that the State Defendants' argument that Snyder may not bring claims for violations of the Maryland Declaration of Rights because these claims are typically interpreted *in pari materia* with their federal counterparts (ECF No. 16-1 at 14–15) is

---

[8]  The State Defendants do not challenge Plaintiff's negligence and gross negligence claim under a theory of direct liability.  As such, the Court need not further address the viability of Count IV.

unavailing.  While it is true that such claims are typically interpreted *in pari materia* with their federal counterparts, *see Evans v. State*, 914 A.2d 25, 67 (Md. 2006), it does not follow that the Maryland constitutional provision will always be interpreted or applied in the same manner as its federal counterpart.  *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1071 (Md. 2002).

It is true that there is no respondeat superior liability under 42 U.S.C. § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  However, this is where Maryland law and federal law diverge.  The Maryland Supreme Court has explained that "Maryland's constitution requires more of its municipalities, and accordingly this [c]ourt has declined to shield municipalities from the unconstitutional acts of its officials."  *Prince George's Cnty. v. Longtin*, 19 A.3d 859, 885 (Md. 2011) (citing *DiPino v. Davis*, 729 A.2d 354 (1999)).  The court in *Longtin* acknowledged that it had previously extended respondeat superior liability to municipalities in *DiPino*.  *Id.* at 885–86 (citing *DiPino*, 729 A.2d at at 372).  And as the Maryland Supreme Court explained in a footnote in *State v. Young*, 333 A.3d 610 (Md. 2025):

> Although Maryland law has not yet recognized that *Longtin* applies to the State, we have previously considered this precise issue in an unreported opinion, *State v. Wallace*, Nos. 0164 & 0642, 2022 WL 2282705 (Md. Ct. Spec. App. June 23, 2022).  *Wallace* is an unreported opinion published before July 1, 2023, and, therefore, may not be cited as persuasive authority pursuant to Maryland Rule 1-104(a)(2)(B).  Our independent analysis of the issue, however, leads us to the same conclusion as we reached in *Wallace*.

*Id.* at 621 n.4.  That is, while there is no respondeat superior liability under § 1983, there is respondeat superior liability under the Maryland Declaration of Rights.

Nevertheless, to the extent that Snyder is arguing that the State Defendants are liable for violations of Article 16, 24, 25, and 26 of the Maryland Declaration of Rights because of the actions of Kavanakudy, the claim must fail because Snyder does not sufficiently allege that

19

Kavanakudy was acting within the scope of his employment, as discussed above. Having determined that Plaintiff's state constitutional claim may not proceed under a theory of vicarious liability, Count I is DISMISSED WITH PREJUDICE to the extent it is brought against the State Defendants under a theory of vicarious liability.[9]

## CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this 15th day of July, 2025, that: the Plaintiff's Motion for Order to Show Cause to Waive the Notice Requirement of the MTCA (ECF No. 18) is GRANTED; and the State Defendants' Motion to Dismiss for Failure to State a Claim or, in the alternative, Summary Judgment (ECF No. 16), construed as a motion to dismiss, is GRANTED IN PART and DENIED IN PART. Specifically, the State Defendants' Motion to Dismiss (ECF No. 16) is GRANTED with respect to Counts V (battery) and VI (IIED) as alleged against the State Defendants. That is, Counts V and VI as alleged against the State Defendants are DISMISSED WITH PREJUDICE, as such claims are advanced against the State Defendants under a theory of vicarious liability. The State Defendants' Motion to Dismiss (ECF No. 16) is DENIED with respect to Counts I (violations of Articles 16, 24, 25 and 26 of the Maryland Declaration of Rights) and IV (negligence and gross negligence). As explained in the foregoing, while Snyder may not pursue Counts I and IV against the State Defendants under the doctrine of respondeat superior, she may pursue those claims against the State Defendants on a theory of direct liability.

---

[9] The State Defendants do not challenge Snyder's state constitutional claim under a theory of direct liability. As such, the Court need not further address the viability of Count IV.

A separate Order follows.

_____/s/_____

Richard D. Bennett
United States Senior District Judge